# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re LAWRENCE HARTUNG and LORINE HARTUNG,<br><br>Debtors. | |
| UNIVERSAL RESTORATION SERVICES, INC.,<br><br>Plaintiff-Appellee,<br>v.<br><br>LAWRENCE HARTUNG and LORINE HARTUNG,<br><br>Defendant-Appellants. | Case No. 14-CV-268-JPS<br><br>Appeal of Adversary Case No. 12-2359<br><br><br><br>ORDER |

On January 17, 2014, Bankruptcy Judge Margaret Dee McGarity granted partial summary judgment to Universal Restoration Services, Inc. ("Universal Restoration"), in adversary case number 12-2359. (Docket #1, Exs. 34–35). Specifically, Judge McGarity determined that the debt owed by Lawrence and Lorine Hartung ("the Hartungs" or "the debtors") was excepted from discharge under 11 U.S.C. §§ 523(a)(4) and 1328(a)(2). (Docket #1, Ex. 34, at 17). The Hartungs appealed that decision, pursuant to 28 U.S.C. §§ 158(a–b), and the parties have fully briefed the matter. (Docket #1, #4, #5).

The Court now turns to addressing the matter, first examining the background of the case, then turning to the merits of the parties' arguments. For the reasons that follow, the Court is obliged to affirm Judge McGarity's decision.

1.    BACKGROUND[1]

In June of 2008, the Hartungs' home suffered serious damage in a flood. Thereafter, the Hartungs hired Universal Restoration to perform restoration and mitigation work on the home. The parties entered into a contract, by which the Hartungs agreed to pay for all of Universal Restoration's work out of the proceeds of a flood insurance policy. The contract specifically stated:

> I authorize Universal Restoration Services Inc. to perform repairs caused by a loss of June 7, 2008. I understand that Assuant [sic] Insurance, my Insurance Company is paying for the repairs to the property damage covered under my policy. I understand that Universal Restoration Services Inc. is an independent contractor hired by me and not by my Insurance Company.
>
> I understand and agree to pay Universal Restoration Services Inc. the full amount of my deductible. I understand and agree to pay Universal Restoration Services Inc. for any and all repairs, or improvements made at my direction, which are not covered under my policy. I understand that I am ultimately responsible for payment even though I am receiving payment via an Insurance Claim.

The Hartungs received the insurance proceeds, which were placed in an escrow account, to be paid to Universal Restoration as the work was being completed. When the work was completed, the Hartungs returned to their residence and signed a release stating that they were satisfied with Universal Restoration's work.

The Hartungs then withdrew the insurance proceeds from the escrow account, but never paid them over to Universal Restoration. Instead, they

---

[1] These facts are drawn largely from Judge McGarity's order. The parties do not contest their validity, nor does the Court find them to be erroneous.

commingled the proceeds with their personal assets, and used them for personal purposes, such as performing other improvements on their residence and paying off other debts.

In an attempt to recover the proceeds, Universal Restoration filed a lawsuit against the Hartungs in Racine County Circuit Court. The Circuit Court held a combined bench/jury trial, which ended with a jury verdict in Universal Restoration's favor.

Specifically, the Circuit Court determined that Universal Restoration had an implied contract with the Hartungs, under which Universal Restoration agreed to perform mitigation and restoration services, and the Hartungs agreed to pay Universal Restoration for the reasonable value of those goods and services.

The jury, meanwhile, deliberated on three issues: whether the Hartungs breached the parties' contract; whether Universal Restoration had not adequately performed the services rendered; and the value of the goods and services provided by Universal Restoration. The jury found: that the Hartungs breached the contract; that Universal Restoration's work was not defective such that it caused damages to the Hartungs; and, that the value of Universal Restoration's services was $17,390.42 for mitigation-related goods and services and $116,465.60 for restoration-related goods and services.

After the trial, Universal Restoration requested that the Circuit Court rule on a number of questions that the jury had not specifically addressed: quantum meruit, unjust enrichment, promissory estoppel, conversion, civil theft, and—most importantly—equitable lien. The Circuit Court held that the quantum meruit, unjust enrichment, and promissory estoppel claims were rendered moot by its previous finding of an implied contract. It also denied Universal Restoration's motion to add a civil theft claim, finding that there

was insufficient evidence to support it and that it would have been more appropriate to present that claim to a jury. Finally, the Circuit Court denied Universal Restoration's request for a judgment on its conversion claim, finding that the Hartungs held title to the insurance proceeds and, while they never paid those funds over pursuant to the contract, they also could not have converted them.

However, the Circuit Court went into great detail in analyzing Universal Restoration's equitable lien claims, entering judgment in Universal Restorations favor on that count. Judge McGarity quoted the Circuit Court's statement on this issue in full; because it is extremely important to the outcome of this case, the Court does the same. On the equitable lien issue, the Circuit Court stated that:

> The jury held, and this Court agrees, that there was no valid reason for the defendants not to have paid the plaintiff. The defendants' claim that the plaintiff had breached a contract or had done shoddy work was emphatically rejected by the jury. The jury found, and the Court agrees, that there was no credible evidence placed on the record to substantiate the claims of the defendants.

> The defendants received the funds from the insurance company knowing that the purpose of the funds was to pay for repairs done to their house. They had the option of simply depositing the funds in an account to be held until a determination could be made as to the validity of their claim that the plaintiff had done poor workmanship. The defendant, however, chose the option of simply utilizing the funds for personal reasons; including purchase of furniture, personal property, and repayment of at least one loan.

> *In this particular case, there was an identifiable fund which the [defendants] had control of which was to be utilized for one purpose, and that purpose was to pay the plaintiff for work performed pursuant to the agreement between the plaintiff and the defendant. The defendant dissipated those funds. By law, the plaintiffs are [sic]*

> *entitled to an equitable lien, and judgment will be entered on that claim in favor to the plaintiff and against the defendant in the amount of $107,534.06.* The Court would note that while it's a judgment on a separate claim, it is part and parcel of the judgment amount and not in addition to the judgment amount.

(Decision, June 7, 2012, Racine County Cir. Ct. Case No. 10-CV-1308 (emphasis added)). The Circuit Court then entered an amended judgment, awarding Universal Restoration the total amount of $164,130.77, plus additional interest, costs, and disbursements, and an equitable lien and constructive trust. The Circuit Court specifically stated that the Hartungs held the insurance proceeds as "trustees…for the sole benefit of Universal Restoration Services, Inc. which was and is the beneficial owner of such property," and that the Hartungs use of those proceeds for their own purposes "constitute[d] a breach of their fiduciary duty to Universal [Restoration]." (Amended Judgment Order, July 9, 2012, Racine County Cir. Ct. Case No. 10-CV-1308). Moreover, the Circuit Court ordered that the "equitable lien by agreement" was "to attach to" the insurance proceeds that the Hartungs had received and upon the real and personal property in the Hartungs' residence.

The Hartungs appealed that decision, arguing that the Circuit Court should not have converted the "equitable lien" to an "equitable lien by agreement," or created a constructive trust on the insurance proceeds, because such an action was not supported by the Circuit Court's and jury's findings.

The Wisconsin Court of Appeals disagreed, finding that the Circuit Court was justified in its actions. After listing the elements of an equitable lien by agreement—(1) a debt to another; (2) a *res* to which that obligation fastens; and (3) a contract from which the debt arises, establishing the parties'

"intention to charge a particular property with the payment of the debt"—the Court of Appeals found that the Circuit Court's findings were not clearly erroneous and established every element. *Universal Restoration Servs., Inc. v. Hartung*, 2013 WI App ¶¶ 9–11, 349 Wis. 2d 789, 837 N.W.2d 178. The Hartungs offered a number of cases that they argued should apply to take their debt outside of the realm of an equitable lien by agreement; the Court of Appeals distinguished each of those cases. *Id.*, at ¶¶ 12–13. The Court of Appeals also affirmed the Circuit Court's imposition of a constructive trust, again finding that the Circuit Court's factual findings were not erroneous and established the elements of a constructive trust:

> A "constructive trust will be imposed only in limited circumstances" where (1) the legal title is "held by someone who in equity and good conscience should not be entitled to [its] beneficial enjoyment" and (2) where title was "obtained by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." Here, Lawrence acknowledged in his testimony that while he and Lorine were very displeased with URS's work on their home, he signed a document from the mortgagee stating that he was satisfied with URS's work thereby giving himself and his wife access to the escrowed insurance proceeds; that the Hartungs had removed all the insurance proceeds from the escrow account, comingling them with their own personal account; that the Hartungs had paid nothing to URS through the date of trial; and that he and his family lived in the restored home from October 2008 through at least trial in 2012. The trial court, having heard all the evidence, held that the Hartungs had a fiduciary duty to hold the insurance proceeds in trust for payment of URS's bill for services and costs and imposed the constructive trust. Where the trial court acts as the finder of fact, and when more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the trier of fact. Based on the limited record before us, we conclude that there exists all of the elements

> necessary for the imposition of a constructive trust and further
> conclude that the trial court did not erroneously exercise its
> discretion when it imposed the constructive trust on the
> insurance proceeds.

*Id.*, at ¶ 15. For those reasons, and others which are not pertinent to the immediate action, the Court of Appeals affirmed the Circuit Court's judgment in full.

The Hartungs then initiated Chapter 13 bankruptcy proceedings on February 22, 2012. (*See* Docket #1, Ex. 1). Predictably, as part of those proceedings, the Hartungs requested discharge of the debt they owed to Universal Restoration.

Shortly thereafter, Universal Restoration filed an adversary proceeding, asserting that the Hartungs' debt should be excluded from discharge. (*See* Docket #1, Ex. 29). In support of that contention, Universal Restoration made the following three arguments: first, that the debt was excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), as being for services obtained by "false pretenses, a false representation, or actual fraud"; second, that the debt was excepted from discharge pursuant to 11 U.S.C. § 523(a)(4), as one for fraud or defalcation while acting in a fiduciary capacity; and, third, for imposition of a constructive trust or equitable lien by agreement. Universal Restoration moved for summary judgment on the latter two claims.

Bankruptcy Judge McGarity granted partial summary judgment in Universal Restoration's favor. Specifically, she found that 11 U.S.C. § 523(a)(4)'s requirements for exception were satisfied. Basing her decision partly on the findings in the state court proceedings, which she determined should be granted preclusive effect, Judge McGarity held that the Hartungs were trustees, owed a fiduciary duty to Universal Restoration, and

committed defalcation. Thus, she concluded that the Hartungs' debt to Universal Restoration was excepted from discharge.

The Hartungs appealed that decision to this Court, pursuant to 28 U.S.C. §§ 158(a–b), and the Court now addresses the matter.

2.     DISCUSSION

Judge McGarity's decision rested fully on 11 U.S.C. § 523(a)(4) to find that the Hartungs' debt to Universal Restoration is not dischargeable. 11 U.S.C. § 523(a)(4) provides that debts "for fraud or defalcation while acting in a fiduciary capacity" cannot be discharged. Thus, where two separate elements—first, the existence of a fiduciary relationship; second, fraud or defalcation while acting in that capacity—are satisfied, a bankruptcy court may not discharge the relevant debt. *In re Berman*, 629 F.3d 761, 765–66 (7th Cir. 2011). Judge McGarity found that both elements were satisfied, here, and relied heavily on the findings of the Circuit Court and Court of Appeals, which she determined had preclusive effect.

That preclusive effect, the Hartungs argue, was applied in error. Specifically, the Hartungs assert that the Circuit Court's judgment does not provide sufficient basis to find *either* the existence of a fiduciary relationship or defalcation.

Thus, there are two broad issues that the Court must answer in this case: first, whether Judge McGarity's finding of the existence of a fiduciary relationship was in error; and, second, whether Judge McGarity's finding of defalcation was in error.

Of course, on this appeal, the Court reviews Judge McGarity's findings of fact for clear error and her conclusions of law *de novo. See, e.g.*, *Berman*, 629 F.3d at 766 (citing *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir.

2010); *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000); *In re Scott*, 172 F.3d 959, 966 (7th Cir. 1999)).

Finally, because this case implicates significant questions of issue preclusion, the Court provides this summary of the topic. In determining the preclusive effect of a state court judgment, the Court must apply Wisconsin's law on issue preclusion. *See, e.g.*, 28 U.S.C. § 1738; *Virnich v. Vorwald*, 664 F.3d 206, 215 & n.3 (7th Cir. 2011); *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). "[U]nder applicable Wisconsin law, issue preclusion, also called collateral estoppel, bars the relitigation of a factual or legal issue that actually was litigated and decided in an earlier action." *Virnich*, 664 F.3d at 215 (citing *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 525 N.W.2d 723, 727 (1995)). For the doctrine to apply, "the issue sought to be precluded must have been *actually* litigated previously," *Lindas v. Cady*, 183 Wis.2d 547, 559, 515 N.W.2d 458, 463 (1994) (emphasis in original).

The first step of the issue preclusion analysis is to determine whether the litigant against whom preclusion is asserted—here, the Hartungs—is in privity with a party in the original litigation. *Paige K.B. ex rel Peterson v. Steven G.B.*, 226 Wis.2d 210, 224, 594 N.W.2d 370, 377 (1999). Of course, the Hartungs, themselves, were parties in the original litigation, so the Court need not address privity for purposes of the balance of this order.

The Court must then conduct a "fundamental fairness" analysis before it can apply the doctrine. *Northern States*, 525 N.W.2d at 727 (citing *Michelle T. v. Crozier*, 173 Wis.2d 681, 686–87, 495 N.W.2d 327, 330–31 (1993)); *Paige K.B.*, 594 N.W.2d at 377 (citing *Michelle T.*, 495 N.W.2d at 332). The factors involved in a fundamental fairness analysis are as follows:

(1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Michelle T.*, 495 N.W.2d at 330-31. Some of these factors are clearly satisfied. As to the first, the Hartungs could and did obtain review; as to the fourth, the burdens of persuasion have not shifted substantially; as to the fifth, there are not matters of public policy or individual circumstances that weigh against application of issue preclusion.

However, the second and third factors require a closer analysis of the issues decided by the state courts, the parties' presentation of those issues in the state courts, and the identity of those issues with the issues presented in this case. Thus, the Court addresses each of those factors in further and more specific detail in Section 2.1.1, *infra*, before determining whether it should apply issue preclusion to the issues in this case.

## 2.1    Existence of Fiduciary Relationship

The existence of a fiduciary relationship is a threshold question; in other words, if the Court does not find a fiduciary relationship, then it need not address whether there was defalcation or fraud. *See, e.g., In re Hayes*, 183 F.3d 162, 170 (2d Cir. 1999). Moreover, the existence of a fiduciary relationship *as a matter of federal bankruptcy law* is separate from the question of whether there was a fiduciary obligation *as a matter of state law. See, e.g.*,

*Berman*, 629 F.3d at 767 (citing *Frain*, 230 F.3d at 1017, for the proposition that "[n]ot all persons treated as fiduciaries under state law are considered to 'act in a fiduciary capacity' for purposes of federal bankruptcy law. The existence of a fiduciary relationship under section 523(a)(4) is a matter of federal law."). The existence of a fiduciary relationship for purposes of federal bankruptcy law is "'strict and narrow.'" *Berman*, 629 F.3d at 767 (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)). The Seventh Circuit has routinely held that "[a] fiduciary relation only qualifies under § 523(a)(4) if it 'imposes real duties in advance of the breach.'" *Frain*, 230 F.3d at 1017 (quoting *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994); *Berman*, 629 F.3d at 767–68 (citing *Davis*, 293 U.S. at 333–34, which was interpreting an earlier version of the statute in question); *Berman*, 629 F.3d at 769 ("For a section 523(a)(4) exception to apply, the fiduciary duties must exist *prior* to the debt." (emphasis added)) (citing *Marchiando*, 13 F.3d at 1115–1116; *In re Johnson*, 691 F.2d 249, 251–52 (6th Cir. 1982)).

However, it seems clear that the existence of an express trust is more than sufficient to establish a fiduciary relationship for federal bankruptcy purposes. *Berman*, 629 F.3d at 768–69 ("At the time of *Davis*[, 293 U.S. at 333], the subset [of fiduciary relationships] was limited to express trusts…. Since then, however, courts have expanded the application of section 523(a)(4) beyond express trusts to certain relationships where the law imposes fiduciary obligations."). "In the absence of an express trust," Universal Restoration may prove the existence of a fiduciary relationship for federal bankruptcy purpose by establishing facts that would support the existence of an implied fiduciary relationship. *See Berman*, 629 F.3d at 769–70 (citing *In re McGee*, 353 F.3d 537, 540–41 (7th Cir. 2003) and *Marchiando*, 13 F.3d at 1113, 1116)).

Here, the Court ultimately determines that the Circuit Court found the existence of an express trust and facts that would establish an implied fiduciary relationship. The Court also determines that those findings are entitled to preclusive effect. Thus, the Court is obliged to find a fiduciary relationship and affirm Judge McGarity's decision in that regard. In reaching that conclusion, the Court resolves the following three questions:[2]

> *first*, whether the fiduciary relationship legal issue or factual issues presented to the state courts is distinct from those presented to the bankruptcy court—in other words, whether the fiduciary relationship issue was actually litigated in the state courts;

> *second*, whether the extensiveness of proceedings in the state court and the bankruptcy court would be predominantly the same; and

> *third*, if the Court answers the first two questions in the affirmative and thus applies issue preclusion to the state court's findings, whether those findings establish the existence of fiduciary relationship for federal bankruptcy purposes.

### 2.1.1 Presentation of Fiduciary Relationship Issue and Extensiveness of State Court Proceedings

The first and second of those questions are interrelated and the Court answers them both in the affirmative.

As to the first question, the Court begins by acknowledging that the legal issue of the existence of a fiduciary relationship for federal bankruptcy purposes *was not* presented in the Circuit Court. To be sure, the Circuit Court, in its July 9, 2012 amended judgment, held that the Hartungs had breached a fiduciary duty they owed to Universal Restoration. However, as already noted, the existence of a fiduciary duty for state purposes is distinct

---

[2] The first and second questions address the second and third "fundamental fairness" factors described in *Michelle T*., 495 N.W.2d at 330–31. The third question applies the fiduciary-relationship law to any findings given preclusive effect.

from its existence for federal bankruptcy purposes and, therefore, the Circuit Court's holding is a distinct legal issue. *See, e.g., Berman*, 629 F.3d at 767 (noting the distinction between state law fiduciary relationships and those that qualify under federal bankruptcy law) (citing *Frain*, 230 F.3d at 1017). Because the legal question presented to the Circuit Court and the legal question presented to the bankruptcy court are distinct from one another, the Circuit Court's finding of a fiduciary duty, itself, cannot be said to have preclusive effect.

The Circuit Court did, however, resolve the legal issue of the existence of an express trust.[3] The Circuit Court never specifically discussed the existence or non-existence of an "express trust," but it did find the existence of an "equitable lien by agreement." That finding of an "equitable lien by agreement," seeing as it essentially implies the existence of an express agreement between the parties to establish a trust-relationship through a lien on specific funds,[4] establishes that the Circuit Court essentially considered the legal issue of the existence of an express trust and found it to exist.

However, even if the Circuit Court cannot be said to have addressed that legal issue for issue preclusion purpose, the Circuit Court *did* resolve a number of factual disputes that are extremely relevant to the existence or

---

[3] As the Court has already discussed and will discuss further, the existence of an express trust directly implicates the existence of a fiduciary duty for federal bankruptcy law purposes.

[4] The Court of Appeals affirmed that decision in full, noting that the Circuit Court's findings "establish the debt, res, and agreement necessary to impose an equitable lien by agreement."

non-existence of a fiduciary relationship.[5] The Court will delve more fully into the specific hallmarks of an express trust and implied fiduciary relationship in Section 2.1.2, *infra*, but suffice it to say that the Circuit Court found the following relevant facts: the Hartungs received the insurance proceeds, after which they placed those proceeds in a segregated escrow account; the sole purpose of those proceeds was to pay for the repairs done to their house; that Universal Restoration was the sole beneficial owner of those funds; and that the Hartungs signed a contract explicitly stating that they understood and agreed to pay the insurance proceeds over to Universal Restoration.

Having answered the first question in the affirmative, as it relates to Circuit Court's legal finding of an express trust and factual findings, the Court must turn to answer the second question to determine before it can apply the doctrine of issue preclusion.

That second question—whether the extensiveness of proceedings in the Circuit Court and bankruptcy court proceedings would be predominantly the same—clearly weighs in favor of issue preclusion. The Hartungs argue that the parties never briefed the issue of the existence of a fiduciary duty, and that the Circuit Court largely pulled its conclusion on that issue out of thin air. (Docket #4 at 8–9). Be that as it may, as to the legal issue of an equitable lien by agreement and the Circuit Court's factual findings, the parties presented ample evidence to the Circuit Court, which the Court relied upon. The Court of Appeals said so explicitly, *see Universal*

_____

[5]And, to be sure, the doctrine of issue preclusion applies to factual issues just as much as it does to legal issues. *See Virnich*, 664 F.3d at 215 ("issue preclusion…bars the relitigation of *a factual or legal issue* that actually was litigated and decided in an earlier action." (emphasis added))(citing *Northern States Power*, 525 N.W.2d at 727).

*Restoration Servs.,* 2013 WI App ¶¶ 9–15, and this Court agrees. There would not be any additional extensiveness to proceedings in the bankruptcy court; instead, any additional proceedings would be totally redundant. Thus, the Court is obliged to answer the second question in the affirmative—the extensiveness of proceedings would be predominantly the same.

With that finding, the Court has answered both the first and second questions in the affirmative, and—in conjunction with its analysis of the other issue preclusion factors—has found that *every* factor weighs in favor of issue preclusion, at least as relates to the Circuit Court's legal finding of an express trust and factual findings. Thus, the Court will treat those findings with preclusive effect.

### 2.1.2 Application of Fiduciary Relationship Law to Findings Given Preclusive Effect

Having granted those findings preclusive effect, the Court must next ask whether those findings establish the existence of a fiduciary relationship for federal bankruptcy purposes.

As the Court earlier noted in Section 2.1.1, *supra*, by finding the existence of an equitable lien by agreement, the Circuit Court essentially found the existence of an express trust. That finding is entitled to preclusive effect. Therefore, because the existence of an express trust is sufficient to establish a fiduciary relationship for federal bankruptcy purposes, *Berman*, 629 F.3d at 768–69 (citing *Davis*, 293 U.S. at 333), the Court is obliged to find a fiduciary relationship, here, as a matter of issue preclusion.

However, even if the Court were not to provide that legal finding with preclusive effect, the Circuit Court's factual findings still establish the existence of an express trust. In discussing the existence of an express trust, the *Berman* court acknowledged that "the hallmarks of a trust…include

'[s]egregation of funds, management by financial intermediaries, and recognition that the entity in control of the assets has at most 'bare' legal title to them,'" and clear intent to create a trust. 629 F.3d at 769 (quoting *McGee*, 353 F.3d at 540–41; citing Robert E. Ginsberg, Robert D. Martin & Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 11.06 at 11–112 (5th ed. 2010) (collecting cases)). The Circuit Court's factual findings indicate all of those hallmarks. The Hartungs placed the insurance proceeds into an escrow account, establishing segregation of the funds. That escrow account was managed by a financial institution, establishing that a financial intermediary managed the insurance proceeds. The Circuit Court acknowledged that the Hartungs had only bare legal title: it found that Universal Restoration was the "sole beneficial owner" of the funds and that the Hartungs held the funds for the sole purpose of paying the costs of the restoration. Finally, the Circuit Court held that the Hartungs had entered a contract with Universal Restoration by which they acknowledged that they "underst[ood] and agree[d] to pay Universal Restoration Services Inc." the insurance proceeds. In doing so, the Hartungs evidenced a clear intent to hold the insurance proceeds for the sole benefit of Universal Restoration and to pay over those proceeds—to create a trust. To be sure, the Court must beware not to find a fiduciary relationship, which is a "strict and narrow" concept for purposes of federal bankruptcy law, where none exists; and Universal Restoration could certainly have put *more* "clear requirements" to the effect of establishment of a trust into its contracts. *Berman*, 629 F.3d at 767 (quoting *Davis*, 293 U.S. at 333), 771 (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202 (1844)). But the Circuit Court's findings are enough to establish clear intent to create a trust. Together with the remaining hallmarks, which are also shown clearly in the Circuit Court's findings, the Court is obliged to find the

existence of an express trust. And, because the existence of an express trust is sufficient to establish a fiduciary relationship for federal bankruptcy purposes, *Berman*, 629 F.3d at 768–69 (citing *Davis*, 293 U.S. at 333), the Court is obliged to find a fiduciary relationship, here, on this basis.

Moreover, even if the factual findings do not establish an *express* trust, they nonetheless establish the existence of an implied fiduciary duty. To find an implied fiduciary duty, the Seventh Circuit has generally looked for a requirement that funds be held in segregation and a disparity in bargaining power between the parties. *Berman*, 629 F.3d at 769 (citing *In re McGee*, 353 F.3d at 540–41 (7th Cir. 2003) and *Marchiando*, 13 F.3d at 1113, 1116, both of which involved statutes imposing a duty on a more-powerful party to segregate funds it would potentially owe to a less-powerful party in the future). The requirement that funds be held in segregation need not be statutorily-imposed: in *Berman*, the Seventh Circuit acknowledged that its "analysis applies beyond cases like *Marchiando* and *McGee*, where a statute or ordinance forms the basis of a fiduciary obligation, to those more closely resembling this case, where a contract is necessary to establish a fiduciary relationship." 629 F.3d at 770. The question is one of substance, rather than label. *Id.* (citing *Davis*, 293 U.S. at 334). Here, as already discussed, the Circuit Court found that the Hartungs were obliged to segregate the insurance funds and to hold them for Universal Restoration's benefit. Likewise, as recipients of the funds, who were holding the funds until satisfied with the completion of the work, the Hartungs had a powerful position, not dissimilar to the landlord in *McGee*, who held a security deposit until satisfied with the state of an apartment left by a renter. *See* 353 F.3d at 540–41. Therefore, the Hartungs' holding of the funds is of the same implied fiduciary discussed in

*Berman*, *Marchiando*, *McGee*, and *Frain*. It is sufficient to establish a fiduciary relationship for federal bankruptcy purposes.

On any of those three separate bases, the Court finds that Judge McGarity's holding that the Hartungs had a fiduciary relationship with Universal Restoration would be correct. Therefore, the Court must affirm her decision in that regard.

### 2.2    Defalcation

11 U.S.C. § 523(a)(4) provides that debts "for fraud or defalcation while acting in a fiduciary capacity" cannot be discharged. Having discussed and approved of Judge McGarity finding on the existence of a fiduciary capacity, the Court must now turn to examining Judge McGarity's finding on defalcation.[6]

The Court begins by pointing out that nothing in the state court proceedings specifically addressed the issue of defalcation. To be sure, neither the Circuit Court nor the Court of Appeals ever held that the Hartungs had committed defalcation.

Thus, to the extent that the state court proceedings have any preclusive effect, it is only to the extent that there are *factual* findings that the Court must examine to determine whether they establish defalcation. *See, e.g.*, *Virnich*, 664 F.3d at 215 ("issue preclusion…bars the relitigation of a *factual* or legal issue that actually was litigated and decided in an earlier action." (emphasis added)) (citing *Northern States Power*, 525 N.W.2d at 727). The same preclusion analysis that the Court engaged in, above, applies here.

---

[6]Neither the parties nor Judge McGarity addressed whether the Hartungs' debt to Universal Restoration could be said to rest upon "fraud." Rather, they have only discussed the existence of defalcation. Therefore, the Court will confine its analysis to that issue.

It is fundamentally fair to afford the Circuit Court's factual findings preclusive effect for determining the existence of defalcation, and the Court does so.

Before addressing those factual findings, the Court first discusses the legal concept of defalcation. The Supreme Court has recently spoken on the issue. In *Bullock v. Bank Champaign, N.A.*, the Supreme Court stated that defalcation "includes a culpable state of mind requirement…involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."--- U.S. ----, 133 S. Ct. 1754, 1757 (2013). The term defalcation "requires an intentional wrong," which may be satisfied either through knowing conduct or reckless conduct.

> Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock*, 133 S. Ct. at 1759-60. So, essentially, the Court is looking for facts that would establish that the Hartungs consciously disregarded a substantial and unjustifiable risk that their conduct would violate a fiduciary duty, such that their conduct constitutes a gross deviation from the standard of conduct a law-abiding person would have observed in their situation. *See id.*

That is clearly satisfied, here. The Circuit Court's factual findings, which the Court gives preclusive effect, include the following: the Hartungs received the insurance proceeds "knowing that the purpose of the funds was to pay for repairs done to their house"; rather than leaving the funds in an escrow account, the Hartungs removed the funds for entirely personal reasons; and, the Hartungs had "no valid reason...not have paid the plaintiff."(Decision, June 7, 2012, Racine County Circuit Court Case No. 10-CV-1308).[7] In other words, knowing that they had entered a contract by which they agreed to pay insurance proceeds to Universal Restoration, the Hartungs removed *the entirety* of those funds from escrow and used them for other, personal purposes. This is certainly a gross deviation from the standards of a law-abiding person, who would abide by the agreement they had signed and, more importantly, *would not* use flood insurance proceeds intended for restoration for personal purposes. Moreover, they took those actions with full knowledge of their agreement with Universal Restoration and the fact that the funds had been placed in escrow pending completion of the work.

Therefore, the Court is obliged to determine that the Circuit Court's factual findings, given preclusive effect, clearly establish defalcation by the

---

[7]The Court of Appeals fully affirmed this decision, noting that the Hartungs knowingly entered into the reimbursement agreement and that Mr. Hartung

"signed a document from the mortgagee stating that he was satisfied with URS's work thereby giving himself and his wife access to the escrowed insurance proceeds; that the Hartungs had removed all the insurance proceeds from the escrow account, comingling them with their own personal account; that the Hartungs had paid nothing to URS through the date of trial."

*Universal Restoration Servs*, 2013 WI App ¶ 15.

Hartungs. The Court, therefore, must also affirm Judge McGarity's opinion in that regard.

3.     CONCLUSION

Having found both the existence of a fiduciary relationship and defalcation, the Court concludes that 11 U.S.C. § 523(a)(4) applies, and excepts the Hartungs' debt to Universal Restoration from discharge. Therefore, the Court must affirm Judge McGarity's decision.[8]

Accordingly,

IT IS ORDERED that the bankruptcy court's decision finding the Hartungs' debt to Universal Restoration to be excepted from discharge, pursuant to 11 U.S.C. § 523(a)(4), be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that this appeal be and the same is hereby DISMISSED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of June, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[8] The Court also notes that Judge McGarity concluded that the Hartungs' debts were not dischargeable under 11 U.S.C. § 1328(a)(2). The Hartungs have not challenged that determination and, therefore, the Court has not addressed it.